**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re:

                                               **Chapter 11**

**MIAMI AIR INTERNATIONAL, INC.**          **Case No. 20-13924-BKC-AJC**

            Debtor.

_____/

**DEBTOR'S EMERGENCY MOTION (I) FOR AUTHORIZATION TO OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 364, (II) TO GRANT ADEQUATE PROTECTION IN CONNECTION THEREWITH PURSUANT TO 11 U.S.C. §§ 361 AND 507, AND (III) <u>SCHEDULING A FINAL HEARING UNDER BANKRUPTCY RULE 4001</u>**

<u>**(Emergency Hearing Requested on Thursday March 26, 2020)**</u>

<u>**Statement of Exigent Circumstances**</u>

The Debtor seeks to continue to operate its business in the ordinary course, to preserve the value of the estate, to preserve jobs and to maintain operations. Without the immediate authorization to obtain financing, the Debtor will not be able to meet payroll, tax, insurance and other obligations necessary for its day-to-day operations. The Debtor respectfully requests that the Court conduct a hearing on this Motion within two business days of the Petition Date (as defined herein), consistent with Local Rule 9013-1(F), as the Debtor believes that a hearing on this Motion is needed no later than Thursday, March 26, 2020 in order for it to continue to operate and meet its payroll obligations on Friday, March 27, 2020. The Debtor respectfully requests that the Court waive the provisions of Local Rule 9075-1(B) which requires an affirmative statement that a bona fide effort was made in order to resolve the issues raised in the Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

MIAMI AIR INTERNATIONAL, INC. (the "<u>Debtor</u>"), by and through its proposed undersigned counsel, files this emergency motion (the "<u>Motion</u>") requesting that this Court enter an interim order (the "<u>Interim Order</u>"), substantially in the form attached hereto as **<u>Exhibit A</u>**[1],

---

[1] In the event of any inconsistency between the summary of the terms contained in this Motion and the terms set forth in the Interim Order, the terms of the Interim Order shall control.

and a final order (the "Final Order," together with the Interim Order, (collectively, the "DIP Financing Orders") pursuant to Sections 105, 361, 362, 364 and 507(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 2014(a), 4001(c), 2016, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of this Court (the "Local Rules") and this Court's *Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing* (the "Guidelines"): (i) authorizing the Debtor to obtain secured postpetition financing, (ii) granting adequate protection in connection therewith, and (iii) scheduling an emergency interim hearing and final hearing on the Motion. In support of this Motion, the Debtor relies upon the *Declaration of Annette M. Eckerle in Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration") filed contemporaneously herewith, and respectfully states as follows:

## I.    JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are sections 105(a), 361, 362, 364, 507(a)(8), 541, 1107(a) and 1108 of the Bankruptcy Code, Rules 2002, 2014(a), 4001(c), 2016, 6003, 6004 and 9014 of the Bankruptcy Rules and Local Rules 9014-1(F) and (H).

## II.    DISCLOSURES UNDER BANKRUPTCY RULES, LOCAL RULES AND GUIDELINES

4.      Pursuant to Local Rules 9013-1(F) and (H) and the Guidelines, the Debtor submits the following summary of the material terms of its proposed secured post-petition financing

pursuant to the proposed Interim Order attached hereto and setting forth the location of such

material terms[2] in the Interim Order.

| Material Provision | Location in Interim Order | Summary Description |
|---|---|---|
| DIP Lender | p. 1 | TSI Holding Company, a Missouri corporation |
| Loan Amount | p. 2 | Not to exceed $3,500,000.00 |
| Interest Rate | p. 2 | Prime Rate established by Bank of America, N.A. from time to time plus 1% (the "Applicable Rate").  From and after an Event of Default, interest shall accrue on all outstanding obligations at the Applicable Rate plus 5% (the "Default Rate"). |
| Liens and Superpriority claim | p. 2, 3, 4, 13 and 14. | (i) First priority lien and security interest in all of the Debtor's pre-petition and post-petition tangible and intangible assets not otherwise subject to a perfected pre-petition lien or security interest, excluding Avoidance Actions and their proceeds, (ii) Junior lien and security interest in all of the Debtor's pre-petition and post-petition tangible and intangible assets that are subject to a perfected pre-petition lien or security interest, excluding Avoidance Actions and their proceeds, and (iii) Superpriority administrative expense claim.  The Superpriority administrative expense claim shall be payable from the proceeds of Avoidance Actions. |
| Proposed Use of DIP Loan Proceeds | Budget attached as Exhibit to Interim Order | Working capital and general corporate purposes; payment of certain administrative costs as set forth in the Budget; payment of insurance on Collateral, with disbursements not to exceed the sum of (x) 120% of the disbursements projected for such week in the Budget, plus (y) (except for the first week) any unused portion of the disbursements projected for any prior week in the Budget (but excluding, for avoidance of doubt, any amounts in excess of 100% of the projected disbursements for any week).  For the Period from the Petition Date through the anticipated Final Hearing (April 24, 2020), the Debtor seeks to use approximately $2.7 million in proceeds of the DIP Loan. The Debtor's Treasurer, Annette M. Eckerle, prepared the Budget. |
| Termination Date | p. 10 | The Interim Period shall be through April 24, 2020, and subject to termination provisions in paragraphs 15 and 16 of the Interim Order. |

---

[2] The following summary contains truncated descriptions of material terms and is qualified in its entirety by the actual terms of the proposed Interim Order. Capitalized but undefined terms shall have the meanings given to such terms in the Interim Order and/or this Motion, as applicable.

| Termination Provisions | p. 15, 16 | Debtor's ability to borrow funds shall terminate upon an event of default including:<br><br>(i) failure to comply with the terms of the Interim Order (including the Budget);<br><br>(ii) the obtaining of credit or the incurrence of indebtedness that is equal to or senior to the liens and claims of DIP Lender, or entitled to priority administrative status which is equal or senior to that granted to the DIP Lender herein;<br><br>(iv) Termination of DIP Lender's lien or security interest or assertion by Debtor that DIP Lender's lien is not valid or perfected;<br><br>(v) relief from stay granted (a) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral, or (b) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority, which would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtor;<br><br>(vi) the reversal, vacatur, or modification (without the express prior written consent of the DIP Lender, in its sole discretion) of the Interim Order;<br><br>(vii) dismissal or conversion of the Case, or appointment of a chapter 11 trustee or examiner;<br><br>(viii) the sale of any portion of the Debtor's assets outside the ordinary course of business without the prior written consent of the DIP Lender, in its sole discretion;<br><br>(ix) the Debtor's failure to obtain entry of a Final Order by April 24, 2020;<br><br>(x) the granting of any motion providing for reconsideration, stay, or vacatur of the Interim Order;<br><br>(xi) (1) the Debtor's assertion in any pleading filed in any court that any material provision of the Interim Order is not valid and binding for any reason, or (2) any material provision of the Interim Order shall, for any reason, cease to be valid and binding without the prior written consent of the DIP Lender; or<br><br>(xii) if any of the Debtor's Equipment (as defined in section 1110(a)(3) of the Bankruptcy Code) is surrendered or repossessed without DIP Lender's consent. |
|---|---|---|
| Remedies Notice Period | p. 16, 17 | Within 7 business days after a Termination Declaration Date, the Debtor and/or the Statutory Committee may seek an emergency hearing to determine if an Event of Default has occurred. |
| Waiver /modification of stay | p. 16 - 19 | Entry of an order granting relief from stay to allow any creditor to execute or enforce a lien on Postpetition Collateral is an Event of Default. The Interim Order grants the DIP Lender relief from the automatic stay to implement the financing including by filing a UCC-1 against the Debtor. |

| Limitation on use of proceeds | p. 19, 20 | Neither proceeds from DIP Loan nor Carve Out Funds may be used (a) to pursue (i) any action adverse to interests of DIP Lender; (ii) invalidate, set aside, avoid, subordinate DIP Lien or Interim Order; (iii) for monetary, injunctive or other affirmative relief against the DIP Lender; (iv) preventing, hindering, delaying DIP Lender's exercise of any right or remedy; (b) for objecting to, contesting, interfering with DIP Lender's enforcement or realization upon any Collateral once Event of Default occurred; (c) using, selling or disposing of Collateral without consent of DIP Lender; (d) objecting to or challenging liens or interest held by DIP Lender; (e) asserting, commencing, prosecuting any claim or cause of action, including Chapter 5 claims against the DIP Lender; (f) prosecuting an objection or contesting the validity, priority, extent or enforceability of any other rights or interests of DIP Lender; or (g) for preventing, hindering or otherwise delaying the exercise by the DIP Lender of any rights and remedies granted under the Interim Order. |
|---|---|---|
| Waiver of right to file a plan | | None |
| Deadlines for filing a plan | | None |
| Waiver/modification of non-bankruptcy law re perfection | p. 16 -19 | The DIP Lender will receive an automatically perfected postpetition security interests in and liens on the Postpetition Collateral |
| Indemnification | | None |
| Limitation of rights of parties under section 506(c) | p. 13, 14 | Postpetition Liens, DIP Obligations and Postpetition Collateral shall not be subject to section 506(c) |
| Granting of lien on claims/causes of action | p. 13 | The Postpetition Liens shall not encumber the Debtor's Avoidance Actions or their proceeds. |
| Carve Out | p. 14, 15 | DIP Lender's Postpetition Liens and Super-Priority Claim shall be subordinate to: (i) the claims of retained professionals of the Debtor in this Case (the "Retained Professionals") up to the amounts set forth in the Budget through the date of a Carve-Out Trigger Notice. From and after receipt of a Carve-Out Trigger Notice, the Carve-Out shall be capped at $50,000 in the aggregate for all Retained Professionals plus up to $20,000 for any subsequently appointed trustee and any professionals engaged by any successor to the Debtor, including an trustee or examiner with expanded powers. (ii) unpaid fees and expenses of the United States Trustee and the Clerk of the Court. |
| Binding Effect | N/A | N/A |

| Interim Order | | Substantially in the form of the Interim Order attached to the Motion as Exhibit A. |
| --- | --- | --- |

### III.   **BACKGROUND**

5.        On March 24, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.

6.        The Debtor is operating its business and managing its affairs as a debtor-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

7.        For a detailed description of the Debtor and its operations, the Debtor respectfully refers the Court and parties in interest to the First Day Declaration.

### IV.   **POSTPETITION FINANCING**

8.        As disclosed in the First Day Declaration, TSI Holding Company, a Missouri corporation (in its capacity as the debtor-in-possession lender) (the "DIP Lender") is the parent and sole shareholder of the Debtor.  Prior to the Petition Date, the DIP Lender provided credit support to the Debtor in the form of unsecured loans.  As of the Petition Date, the DIP Lender had made advances to the Debtor totaling $6,995,589.26.

9.        Given impact of the COVID-19 pandemic on the global economy, and on the aviation industry in particular, the Debtor does not presently have the liquidity needed to sustain its business.  The DIP Lender is willing to provide post-petition financing to the Debtor upon the terms and conditions contained in the Interim Order that accompanies this Motion.  Absent the financing, the Debtor cannot sustain its operations and preserve going concern value for the benefit of all stakeholders.

10.        For the reasons described hereafter, the proposed financing is necessary to promote an effective reorganization of the Debtor and its terms are in the best interest of the estate and its creditors.

11.     Through this Motion, the Debtor seeks to obtain senior secured post-petition financing from the DIP Lender pursuant to the terms and conditions as set forth in the proposed Interim Order and any promissory note and loan and security documents to be executed by the Debtor in connection with and consistent with the terms and conditions of such financing (collectively, the "DIP Loan Documents") on the following terms:

(i)     borrow, pursuant to this Interim Order and the DIP Loan Documents, one or more interim initial advances in an amount not to exceed $3,500,000, with no more than $2,900,000 outstanding at any time during the Interim Period (as defined below) and pursuant to the Budget attached hereto as **Exhibit B** (the "DIP Loan") at an annual interest rate of the prime rate established from time to time by Bank of America, plus 1% (currently 4.25%), with no commitment fee, exit fee, unused line fee or similar fee to the DIP Lender;

(ii)     grant to the DIP Lender, pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and the terms of the DIP Loan Documents, but subject in all events to the Carve Out (set forth below), perfected and enforceable liens and security interests comprised of (a) a first priority valid, binding, enforceable lien and security interest, pursuant to section 364(c)(2) of the Bankruptcy Code, on and against all tangible and intangible property of the Debtor, whether owned as of the Petition Date or acquired thereafter, and all rights, claims and causes of action of the Debtor-Borrower, including commercial tort claims; excluding, however, any claims and causes of action available to the Debtor or the estate through the exercise of the powers granted under Chapter 5 of the Bankruptcy Code (collectively the "Collateral") that is not otherwise subject of a prior

perfected and duly enforceable lien or security interest as of the Petition Date, (b) a junior priority valid, binding, enforceable lien and security interest, pursuant to section 364(c)(3) of the Bankruptcy Code, on and against the Collateral that is otherwise subject of a prior perfected and duly enforceable lien or security interest as of the Petition Date, and (c) all proceeds and products of and from the Collateral, and all substitutions, renewals, improvements and replacements of any of the Collateral; and further including all proceeds and products of any of the foregoing Collateral, including without limitation, the proceeds of all insurance policies insuring the foregoing Collateral or any part thereof and proceeds of said insurance, and including unearned premiums (collectively, the "Proceeds")(the Collateral and the Proceeds are collectively referred to herein as "Postpetition Collateral");

(iii)   incur all of the obligations, liabilities and indebtedness under and in respect of the DIP Loan, including principal, interest, attorneys' fees and expenses, financial advisory fees and expenses, and other charges of the DIP Lender (collectively, the "DIP Obligations") and pay all amounts contemplated to be paid thereunder;

(iv)   use the proceeds of the DIP Loan in a manner consistent with the terms and conditions of the Interim Order, the DIP Loan Documents and in accordance with the Budget, solely for the purposes set forth in the Budget, including for (a) working capital and general corporate purposes, (b) payment of certain of the costs of administration of the Case, to the extent set forth in the Budget, and (c) payment of insurance on the Collateral;

(v)   grant to the DIP Lender, pursuant to section 364(c)(1) of the Bankruptcy Code, a

super-priority administrative expense claim in respect of all DIP Obligations with priority over all administrative expenses, subject only to the Carve-Out;

(vi)     vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order; and

(vii)    and schedule a final hearing (the "<u>Final Hearing</u>")[3] to consider entry of a final order (the "<u>Final Order</u>") granting the relief requested in the Motion on a final basis and approve the form of notice with respect to the Final Hearing.

## V.     REQUEST FOR PRELIMINARY HEARING TO CONSIDER GRANTING INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING

12.     Pursuant to Bankruptcy Rule 4001(c)(2), a final hearing on a motion to obtain post-petition financing may not be commenced earlier than 14 days after service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize post-petition financing to the extent "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankruptcy Rule 4001(c)(2). It is essential to the continued operation of the Debtor's business that it be authorized by this Court to obtain post-petition financing as set forth in the Interim Order pending the final hearing on the Motion. Unless this Motion is approved on an interim basis, the Debtor will be unable to pay its employees and other immediate obligations as set forth in the Budget, which would have a devastating effect on the Debtor's operations, customer base and revenues. Thus, funds are urgently needed to meet all of the Debtor's immediate working capital and other liquidity needs.

---

[3] The Debtor is evaluating its financing needs beyond the term of the Interim Order. Not later than three (3) business days prior to the date of the Final Hearing, the Debtor shall file an amended budget and a proposed form of Final Order disclosing the amount the Debtor seeks to borrow from the DIP Lender on a final basis, which amount may exceed the amount of the DIP Loan proposed herein.

In the absence of immediate relief, the Debtor's ability to operate its business in the ordinary course will be immediately and irreparably jeopardized.

13.     The Debtor has been informed that the DIP Lender is willing to provide the DIP Loan, subject to the conditions set forth in the Interim Order, including, without limitation, the provisions of the Interim Order assuring that the security interests and liens pursuant to section 364(c) of the Bankruptcy Code and the various claims, superpriority claims, and other protections granted pursuant to the Interim Order will not be affected by any subsequent reversal or modification of the Interim Order, or by any other order that is applicable to the DIP Loan, as provided in section 364(e) of the Bankruptcy Code.

14.     The Debtor submits that the DIP Lender has acted in good faith in consenting to and in agreeing to provide the financing, and the reliance of the DIP Lender on the assurances referred to above is in good faith.  The DIP Lender and the Debtor have negotiated at arms' length and in good faith regarding the DIP Financing to fund the continued operations of the Debtor. The DIP Lender will not agree to provide the DIP Loan, absent the approval of the terms and conditions set forth in the Interim Order.

15.     Given the impact that the Coronavirus pandemic and the travel restrictions imposed by several countries in the world have had on the Debtor's business operations, as well as the uncertainty of the Debtor's future resulting therefrom and the extreme time constraints facing the Debtor, the Debtor's range of realistic financing alternatives is extremely limited if not non-existent. The Debtor submits that the terms and conditions of the DIP Loan, taken as a whole, are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duty; and are supported by reasonably equivalent value and fair consideration.

16.     In view of the foregoing, the Debtor respectfully requests entry of an Interim Order in substantially the form attached hereto as Exhibit A, together with such amendments and modifications as may be made by Debtor and DIP Lender prior to, at or as a result of the Interim Hearing.

17.     Such interim relief is essential to enable the Debtor to fulfill its existing obligations, as specifically detailed in the Budget.  These sums will be required to pay employees and other immediate operating expenses that are the very minimum necessary for the Debtor to continue as a going concern for the benefit of all of its creditors, employees and stakeholders.  Accordingly, the Debtor respectfully requests approval of the Motion, pending a final hearing on the Motion, on an emergency interim basis, on the terms and subject to the conditions set forth in the Interim Order and Budget, or on such other terms that the Court may deem appropriate.

## VI.     BASES FOR THE RELIEF REQUESTED

### A.     Incurrence of Secured Debt Pursuant to Bankruptcy Code Section 364

18.     Section 364(c) of the Bankruptcy Code provides as follows:

(c)     If the trustee [or debtor in possession] is unable to obtain unsecured credit allowable under § 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

(1)     with priority over any and all administrative expenses of the kind specified in § 503(b) or 507(b) of this title;

(2)     secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3)     secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

19.     Pursuant to section 364 of the Bankruptcy Code, a debtor may, in the exercise of

its business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate.  *See* 11 U.S.C. §§ 364(c), (d); *In re Nat'l Litho, LLC*, 2013 WL 2303786 (Bankr. S.D. Fla. 2013) (Isicoff, J.); *In re Trigeant Holdings, Ltd.*, 2014 WL 5789926, at*3 (Bankr. S.D. Fla. Oct. 10, 2014); *In re Ames Dep't Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990)(with respect to post-petition credit, courts "permit debtor[s]-in-possession to exercise their basic business judgment consistent with their fiduciary duties"); 3 COLLIER ON BANKRUPTCY  364.03, at 364-7-18 (15th ed. rev. 2001).

20.     To satisfy the standards of section 364 of the Bankruptcy Code, a debtor is not required to seek credit from every possible source: "the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Fed. Sav. & Loan Ass'n* (*In re Snowshoe Co.*), 789 F.2d 1085, 1088 (4th Cir. 1986). Rather, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of section 364(c).  *Id.*; see also *In re Ames*, 115 B.R. 38, 40 (Bankr. S.D.N.Y. 1990). Where there are few lenders likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988).  In general, a bankruptcy court should defer to a debtor's business judgment regarding the need for and proposed use of funds unless such judgment is arbitrary and capricious. *In re Curlew Valley Associates*, 14 B.R. 507, 511-14 (Bankr. D. Utah 1981).

21.     There are no prohibitions in the Bankruptcy Code for an insider or an affiliate of an insider to make a debtor-in-possession loan.  In addition, even though the DIP Lender is not seeking a priming lien, there are no requirements other than those set forth in section 364 of the Bankruptcy Code for a debtor to obtain a priming debtor-in-possession loan from an insider or

an affiliate of an insider.  *See In re Devlin*, 185 B.R. 376 (Bankr. M.D. Fla. 1995)(Court allowed

a priming debtor- in-possession loan from the debtor's mother under section 364(d)(1)); *In re*

*495 Central Park Avenue Corp.*, 136 B.R. 626 (Bankr. S.D.N.Y 1992)(Court allowed priming

debtor-in-possession loan from shareholders of the debtor); *Bland v. Farmworker Creditors* (*In*

*re Bland*), 308 B.R. 109 (S.D. Ga. 2003)(Recognizing that courts can approve priming loans

from insiders); *In re Phase-I Molecular Toxicology, Inc.*, 285 B.R. 494 (Bankr. D. N.M.

2002)(Court denied debtor-in- possession loan from an insider because debtor did not satisfy

the provisions of section 364 of the Bankruptcy Code).

22.    The Debtor has satisfied the requirements of sections 364(c) because, under

current circumstances, it is unable to obtain credit other than as provided herein.  The liens granted

to the Postpetition Lender shall, except as provided in the Interim Order, be first priority liens

on all property that is not o t h e r w i s e subject to properly perfected liens on the Petition Date.

23.    Given the current economic and health circumstances facing the world as set forth

above, the Debtor firmly believes that the financing to be provided as contemplated by the

Interim Order represents the best — and only — financing available to the Debtor at this

time, warranting approval of the proposed Interim Order on an emergency basis, pending a

the Final Hearing.

24.    In the exercise of its business judgment, the Debtor has concluded that the

DIP Lender is the only lender willing and able to offer a post-petition credit facility that meets

the Debtor's working-capital needs on the terms, and within the time frame, required by the

Debtor.  Courts routinely defer to the business judgment of the debtor on most business

decisions, including borrowing decisions. *See*, *e.g.*, *In re Simasko Prod. Co.*, 47 B.R. 444,

449 (D. Colo. 1985) ("business judgments should be left to the board room and not to this

Court"); I*n re Lifeguard Indus., Inc.,* 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same); *In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981) (courts generally will not second-guess a debtor's business decisions where those decisions constitute "a business judgment made in good faith, upon a reasonable basis, and within the scope of its authority under the Code"); *In re Weaver Oil Co., Inc*., 2008 WL 8202063, at *2 (Bkrtcy. N.D. Fla. ,2008) ("Under the "business judgment rule", the Bankruptcy Court recognizes that it is "no more equipped to make subjective business decisions for insolvent businesses than [the Court is] for solvent businesses," and the formulation of the business judgment rule in corporate litigation is also the appropriate formulation of the business judgment rule in the Bankruptcy Court"). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A*., 762 F.2d 1303, 1311 (5th Cir. 1985).

25.     More fundamentally, unless the Debtor has access to the DIP Loan, it will not have sufficient funds to continue to operate its business and to preserve its assets.  Indeed, in the absence of such financing, it will not continue as a going concern, resulting in a dramatic decrease in the value of the Debtor's assets and the overall estate.  Accordingly, the use of funds provided by the DIP Loan to avert an immediate shutdown and liquidation of the Debtor, and to enable the Debtor to effect a preservation of the value of the Debtor's assets is clearly in the best interests of the Debtor's estate.

26.     Based on the circumstances present here, and the grounds and authorities set forth above, the Debtor firmly believes that the financing sought is the best financing available, and that it is in the best interests of its estate and creditors to enter into the DIP Loan.  It respectfully

requests authority to do so.

27.    Notice of this motion was served, in compliance with Federal Rule of Bankruptcy Procedure 4001(c)(1)(C), upon the Office of the United States Trustee, the Internal Revenue Service, and the persons and/or entities identified in the list of 20 largest unsecured creditors of the Debtor, as no unsecured creditors' committee has been appointed.

28.    A proposed Interim Order authorizing the Debtor to obtain postpetition financing pending a Final Hearing is attached hereto as Exhibit "A". At the Interim Hearing, the Debtor will seek entry of an order in substantially the same form as the Interim Order attached hereto.

WHEREFORE, the Debtor respectfully requests that the Court enter the Interim Order in the form attached hereto: (i) authorizing the Debtor on an interim basis as set forth herein to obtain secured postpetition financing, and grant liens and superpriority administrative expense claims, (ii) setting an emergency interim hearing and thereafter a final hearing; and (iii) granting the Debtor such other and further relief as may be proper and just.

Dated: March 25, 2020                    Respectfully Submitted,

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Proposed Attorneys for Debtor-in-Possession*
100 Southeast Second Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By:    _/s/    Paul J. Battista_
          Paul J. Battista, Esq.
          Florida Bar No. 884162
          pbattista@gjb-law.com
          Mariaelena Gayo-Guitian, Esq.
          Florida Bar No. 813818
          mguitian@gjb-law.com
          Heather L. Harmon
          Florida Bar No. 13192
          hharmon@gjb-law.com

EXHIBIT A
<u>PROPOSED INTERIM ORDER</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re:

                                                        **Chapter 11**

**MIAMI AIR INTERNATIONAL, INC.**              **Case No. 20-13924-BKC-AJC**

                   **Debtor.**

_____/

**INTERIM ORDER G R A N T I N G DEBTOR'S EMERGENCY MOTION (I) FOR
AUTHORIZATION TO OBTAIN POSTPETITION SECURED FINANCING
PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 364, (II) TO GRANT ADEQUATE
PROTECTION IN CONNECTION THEREWITH PURSUANT TO 11 U.S.C. §§
361 AND 507, AND (III) SCHEDULING A FINAL HEARING UNDER
<u>BANKRUPTCY RULE 4001</u>**

THIS MATTER came for hearing on March___, 2020 at _____ a.m./p.m. (the "<u>Interim</u>

<u>Hearing</u>") upon the Emergency Motion of Miami Air International, Inc. (the "<u>Debtor</u>") in the

above captioned chapter 11 case seeking entry of an interim order (this "<u>Interim Order</u>") and a

Final Order (as defined below) authorizing, <u>inter alia</u>, the Debtor to:

        (i)       obtain secured post-petition financing from TSI Holding Co., a Missouri

                corporation (in its capacity as the debtor-in-possession lender, (the "<u>DIP</u>

9661024-2

<u>Lender</u>"))[1] pursuant to the terms and conditions of this Interim Order and any promissory note and loan and security documents to be executed by the Debtor in connection with and consistent with the terms and conditions of such financing (collectively, the "<u>DIP Loan Documents</u>").

(ii)     borrow pursuant to this Interim Order and the DIP Loan Documents, one or more interim initial advances in an amount not to exceed $3,500,000.00 outstanding at any time, with a maximum of $2,900,000 during the Interim Period (as defined below) and pursuant to the Budget attached hereto as Exhibit "A" (the "<u>DIP Loan</u>") at an annual interest rate equal to the Prime Rate established by Bank of America, N.A. from time to time (currently 3.25%) plus 1%[2] (the "<u>Applicable Rate</u>"), with no commitment fee, exit fee, unused line fee or similar fee to the DIP Lender;

(iii)    grant to the DIP Lender, pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and the terms of the DIP Loan Documents, but subject in all events to the Carve Out (set forth below), perfected and enforceable liens and security interests comprised of (a) a first priority valid, binding, enforceable priority lien and security interest, pursuant to section 364(c)(2) of the Bankruptcy Code, on and against on and against all tangible and intangible property of the Debtor wherever located, including, without limitation the following:

A.     All equipment of every type now owned or hereafter acquired by Debtor, wherever located, including without limitation all machinery, furniture, fixtures, parts, leasehold equipment, fittings, accessories and special tools affixed thereto or used in connection therewith;

B.     All rights to the payment of money now owned or hereafter acquired by Debtor, whether due or to become due and whether or not earned by performance,

---

[1] The Debtor has disclosed and the Court notes that the Debtor is a wholly-owned subsidiary of the DIP Lender.
[2] From and after an Event of Default, interest shall accrue at the Applicable Rate plus 5%.

including but not limited to those rights relating to, evidenced by or constituting accounts, general intangibles, chattel paper, instruments, contract rights, notes, drafts, acceptances, letters of credit and certificates of deposit, together with any interest accrued or to accrue thereon, any security held therefor, any guaranties thereof and all records and credit information pertaining thereto;

C.      All documents now owned or hereafter acquired by Debtor, whether negotiable or non-negotiable, including without limitation all warehouse receipts, receipts in the nature of warehouse receipts, and bills of lading;

D.      All trademarks, trade names, copyrights, intellectual property and all other personal property of Debtor;

E.      All monies, bank accounts, balances, credits, deposits, collections, drafts, bills, notes and other assets property of every kind (whether tangible or intangible) now owned or hereafter acquired by Debtor; and

F.      All claims and causes of action of the Debtor or the estate, including commercial tort claims and the Debtor's rights under Section 506(c) of the Bankruptcy Code; excluding, however, claims and causes of action available to the Debtor or the estate through the exercise of the power granted pursuant to Chapter 5 of the Bankruptcy Code ("Avoidance Actions") and their proceeds,

whether owned as of the Petition Date or acquired thereafter (collectively the "Collateral") that is not otherwise subject of a prior perfected and duly enforceable lien or security interest as of the Petition Date, (b) a junior priority valid, binding, enforceable lien and security interest, pursuant to section 364(c)(3) of the Bankruptcy Code, on and against the Collateral that is otherwise subject of a prior perfected and duly enforceable lien or security interest as of the Petition Date, and (c) all proceeds and products of and from the Collateral, and all substitutions, renewals, improvements and replacements of any of the Collateral; and further including all proceeds and products of any of the foregoing Collateral, including without limitation, all insurance policies insuring the foregoing Collateral or

any part thereof and proceeds of said insurance, and including unearned premiums (collectively, the "Proceeds")(the Collateral and the Proceeds are collectively referred to herein as "Post-petition Collateral");

(iv)    incur all of the obligations, liabilities and indebtedness under and in respect of the DIP Loan, including attorneys' fees and expenses and financial advisory fees and expenses of the DIP Lender (collectively, the "DIP Obligations") and pay all amounts contemplated to be paid thereunder;

(v)    use the proceeds of the DIP Loan in a manner consistent with the terms and conditions of this Interim Order, the DIP Loan Documents and in accordance with the Budget, solely for the purposes set forth in the Budget, including for (a) working capital and general corporate purposes, (b) payment of certain of the costs of administration of the Case, to the extent set forth in the Budget, (c) payment of interest, fees and costs to the DIP Lender under this Interim Order, and d) payment of insurance on the Postpetition Collateral;

(vi)    grant to the DIP Lender, pursuant to section 364(c)(1) of the Bankruptcy Code, a super-priority administrative expense claim in respect of all DIP Obligations with priority over all administrative expenses, subject only to the Carve-Out (as defined below) and the other terms and conditions contained herein;

(vii)    vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order; and schedule a final hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") granting the relief requested

4

in the Motion on a final basis and approve the form of notice with respect to the Final Hearing.

The Court, having considered the Motion, the Declaration of Annette M. Eckerle in Support of Chapter 11 Petition and First Day Motions [ECF No. ___] (the "First Day Declaration") which was filed contemporaneously with the Motion, and the evidence submitted, adduced or proffered at the Interim Hearing, the notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(c) and 9014, and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court, and it appearing to the Court that granting the interim relief and entering this Interim Order is necessary to avoid immediate and irreparable harm to the Debtor, its creditors and its estate pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate and its creditors, and equity holders, and is essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    Petition Date.  On March 24, 2020 (the "Petition Date"), the Debtor commenced this case (the "Case") by filing a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Court"). The Debtor is continuing in the management and operation of its business and properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over the Case pursuant to 28 U.S.C. §§ 157 and 1334 and over the persons and property affected hereby.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of the Debtor's Case is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

C.    <u>No Committee Formation</u>.  No official committee of unsecured creditors has been appointed in the Case.

D.    <u>Notice</u>.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor, whether by facsimile, e-mail, overnight courier or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee; (ii) Internal Revenue Service; (iii) the parties included on the Debtor's list of the twenty (20) largest unsecured creditors; (iv) counsel to the DIP Lender, (v) any known secured creditors of record; (vi) any known parties asserting liens against the Debtor's assets; and (vii) any parties required to be served under any applicable Bankruptcy Rule or Local Rules. The Debtor has made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the granting of the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

E.    <u>Debtor's Acknowledgements and Agreements</u>.  After consultation with its attorneys and financial advisors, the Debtor admits, stipulates, acknowledges and agrees that:

      (i)     Until such time as all DIP Obligations are indefeasibly paid in full in cash (or otherwise satisfied according to such terms as may be mutually agreed among the Debtor and the DIP Lender), the Debtor shall not in any way prime or seek to prime the Post-petition Liens (as defined below) provided to the DIP Lender under this Interim Order by offering a

subsequent lender or a party-in-interest a superior or <u>pari passu</u> lien or claim on the Post-petition Collateral (as defined below) or a claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

(ii)    Without the prior express written approval of the DIP Lender, the Debtor shall not (i) file with the Bankruptcy Court any pleading or request to (A) limit, alter, modify, or terminate any provision of this Interim Order, or any protection granted to DIP Lender hereunder, or (B) extinguish, subordinate or diminish any security interest, lien or claim of the DIP Lender, or (ii) seek, consent to, or join in the approval of any matter or any plan of reorganization which purports to do any of the things prohibited by this Interim Order.

F.    <u>Findings Regarding the Post-Petition Financing</u>.  The ability of the Debtor to finance its operations requires the use of the proceeds of the DIP Loan, absent which immediate and irreparable harm will result to the Debtor, its estate and creditors. In the absence of the DIP Loan, the continued operation of the Debtor's business would not be possible and immediate and irreparable harm to the Debtor, its estate and creditors would occur. The Debtor does not have sufficient available sources of working capital and financing to operate its business in the ordinary course of business or to maintain its property without the DIP Loan.  The relief requested in the Motion is therefore necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of its property. The DIP Lender and the Debtor have negotiated at arms' length and in good faith regarding the DIP Loan to fund the continued operation of the Debtor's business during the interim period covered by this Order. As a result, the Debtor has requested immediate entry of this Interim Order

pursuant to Bankruptcy Rule 4001(c)(2).  Good and sufficient cause has been shown for the entry of this Interim Order. Among other things, the entry of this Interim Order is in the best interests of the Debtor, its creditors and its estate because it will enable the Debtor to (i) continue the orderly operation of its business and avoid an immediate shutdown of operations; (ii) meet its obligations for payroll, necessary ordinary course expenditures, and other operating expenses; (iii) pay necessary fees and expenses under the Bankruptcy Code and make payments authorized under other Orders entered by this Court; all in accordance with the Budget (as defined herein); (iv) obtain needed goods and services; and (v) retain customer, supplier and employee confidence by demonstrating that they have the financial ability to maintain normal operations; thereby avoiding immediate and irreparable harm to the Debtor's estate.

G.     <u>No Credit Available on More Favorable Terms</u>.  The Debtor has been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor has also been unable to obtain secured credit, allowable only under sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on more favorable terms and conditions than those provided in the DIP Loan Documents and this Interim Order.  The Debtor is unable to obtain credit for borrowed money without granting to the DIP Lender the DIP Protections (as defined below).

H.     <u>Use of Proceeds of the DIP Loan</u>.  Proceeds of the DIP Loan shall be used, in each case in a manner consistent with the terms and conditions of the DIP Loan Documents, and in strict compliance with the Budget solely for the purposes (i) set forth in the Budget, including among other things, for (a) working capital and general corporate purposes, including the payroll and overhead associated with operating the Debtor's business, (b) payment of certain of the costs of administration of the Case, to the extent set forth in the Budget, (d) payment of

9661024-2

interest, fees and costs to the DIP Lender under the DIP Loan Documents, and (e) payment of the maintenance of and insurance on the Postpetition Collateral.

I.     <u>Payment of Post-Petition Principal, Interest and Expenses</u>.  The Debtor is authorized to pay, and the DIP Lender is entitled to receive the costs and expenses of the DIP Lender in connection with the Case and in accordance herewith.  The DIP Loan shall mature and become due and payable on the earlier of (1) the occurrence of an Event of Default, or (2) April 24, 2020 (the "<u>Maturity Date</u>"), subject to extension pursuant to the terms of a Final Order.  On the Maturity Date, all the DIP Obligations shall become due and payable in full, in cash, to the DIP Lender.

J.     <u>Extension of Financing</u>.  The DIP Lender has indicated a willingness to provide interim financing to the Debtor in accordance with this Interim Order and the DIP Loan Documents and subject to (i) the entry of this Interim Order, and (ii) findings by the Court that such financing is essential to the Debtor's estate, that the DIP Lender is a good faith lender, and that the DIP Lender's claims, super priority claims, senior security interests and liens and other protections granted pursuant to this Interim Order and the DIP Loan will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order, the Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

K.     <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>.  (i) The terms and conditions of the DIP Loan and the DIP Loan Documents, and the fees and costs to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration; (ii) the DIP Loan and this Interim Order were negotiated in good faith and at arms' length between the Debtor and the DIP Lender;

9661024-2

and (iii) use of the proceeds to be extended under the DIP Loan will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender is entitled to the full protection and benefits of section 364(e) of the Bankruptcy Code.

L.    <u>Entry of Interim Order</u>.  For the reasons stated above, the Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

NOW, THEREFORE, on the Motion of the Debtor and the record before this Court with respect to the Motion, and with the consent of the Debtor and the DIP Lender to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

IT IS ORDERED  that:

1.    The Motion is granted in accordance with and limited to the terms and conditions set forth in this Interim Order and the DIP Loan Documents.

2.    All objections to the Motion as it relates to the interim relief sought therein and to the entry of this Interim Order have been resolved by the provisions hereof or are overruled.

3.    Notwithstanding any provision of the Bankruptcy Code or the Bankruptcy Rules to the contrary, this Interim Order shall take effect immediately upon entry and shall remain in effect until 11:59 p.m. (Prevailing Eastern Time) on April 24, 2020 (such period being referred to as the "<u>Interim Period</u>"), subject to being extended pursuant to the terms of a Final Order.

4.    The Debtor, the DIP Lender, and their respective advisors and employees have acted in good faith in negotiating, consenting, and agreeing to the DIP Loan as contemplated and provided by this Interim Order. The negotiation of the terms and provisions of this Interim Order has been conducted at arms' length, and such terms and provisions are fair and reasonable under the circumstances and reflect the Debtor's exercise of reasonable business judgment consistent with the Debtor's fiduciary duties.

5.      Nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or its advisors or employees, any liability for any claims arising from the prepetition or post-petition activities of the Debtor in the operation of its business, or in connection with its restructuring efforts.

6.      Based on the findings set forth in this Interim Order and the reliance of the DIP Lender in good faith on the terms thereof, if any of the provisions of this Interim Order are hereafter modified, vacated or stayed by an Order of this Court or another court, such stay, modification or vacation shall not affect the validity and enforceability of any lien, security interest or priority authorized for the benefit of the DIP Lender hereunder that is granted or attaches prior to the effective date of such stay, modification or vacation, and any use of DIP Loan by the Debtor pursuant to this Interim Order prior to the effective date of such modification, stay or vacation shall be governed in all respects by the original provisions of this Interim Order.

7.      This Interim Order is without prejudice to the rights of the DIP Lender to seek a modification of this Interim Order, including a request for additional adequate protection or the termination of the DIP Loan, after notice and hearing, including a hearing noticed on an emergency basis.   The DIP Lender has expressly reserved, and this Interim Order is without prejudice to, any and all rights and remedies of the DIP Lender, including the appropriateness of any adequate protection that may be proposed in connection with the DIP Loan after the Interim Period.

8.      The DIP Lender shall receive such protections and be entitled to such rights as are set forth in this Interim Order. The Debtor and all other relevant parties are expressly and immediately authorized, empowered and directed (i) to execute and deliver to DIP Lender the DIP Loan Documents in a form consistent with the terms of this Interim Order, (ii) to

11

consummate the transactions described herein and therein and incur and perform on an interim basis the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and (iii) to execute and deliver all instruments and documents which reasonably may be required or necessary for the performance by the Debtor under the DIP Loan and the creation and perfection of the Post-petition Liens described in and provided for by this Interim Order and the DIP Loan Documents.  The Debtor is hereby authorized to perform all acts, and subject to the provisions of this Interim Order, pay the principal, interest, fees, expenses and other amounts described in this Interim Order and the DIP Loan Documents as such become due, including, without limitation, attorneys' fees and disbursements pursuant to the terms hereof.

9.      In order to enable it to continue to operate its business during the Interim Period, subject to the terms and conditions of this Interim Order, the DIP Loan Documents and the Budget (which Budget may not be materially amended or modified during the Interim Period), the Debtor is hereby authorized under the DIP Loan to borrow up to the amounts set forth in the Budget during the Interim Period.  Notwithstanding any provision of its certificate or articles of incorporation, bylaws, operating agreement, partnership agreement, membership agreement, certificate of formation, certificate of limited partnership, regulations, or comparable governing documents to the contrary, the Debtor is authorized to, and each officer, member, manager, partner, or other comparable authorized signatory of the Debtor is hereby authorized to pledge, mortgage and grant security interests in its assets to secure such DIP Obligations, and to execute and enter into any and all of the DIP Loan Documents and all other documents and transactions necessary to implement and effectuate the terms of the DIP Loan, this Interim Order and the DIP Loan Documents.

10.     The proceeds of the DIP Loan (net of any amounts used to pay fees, costs and

expenses under this Interim Order or the DIP Loan Documents) shall be used, in each case in a manner consistent with the terms and conditions of this Interim Order and the DIP Loan Documents, and in accordance with the Budget limited pursuant to this Interim Order to the Interim Period.

11.    Effective immediately upon the entry of the Interim Order, the DIP Lender is hereby granted, pursuant to subsections 364(c)(2) and (c)(3) of the Bankruptcy Code, perfected and enforceable liens and security interests (collectively, the "Postpetition Liens") comprised of (a) a first priority valid, binding, enforceable priority lien and security interest, pursuant to section 364(c)(2) of the Bankruptcy Code, on and against the Post-petition Collateral that is not otherwise subject of a prior perfected and duly enforceable lien or security interest as of the Petition Date, and (b) a junior priority valid, binding, enforceable lien and security interest, pursuant to section 364(c)(3) of the Bankruptcy Code, on and against the Post-petition Collateral that is otherwise subject of a prior perfected and duly enforceable lien or security interest as of the Petition Date; provided, however, that the Post-petition Liens shall not encumber the Debtor's avoidance claims or causes of action arising under chapter 5 of the Bankruptcy Code and the proceeds thereof (the "Avoidance Actions").  Notwithstanding anything herein to the contrary, the Post-petition Liens shall at all times be subject to the Carve Out.

12.    Except as set forth in this Interim Order and the Carve Out, the Post-petition Liens granted pursuant to this Interim Order shall be senior in priority and shall not be made subject to, or pari passu with any prepetition lien or security interest by any court order heretofore or hereafter entered in the Case and shall be valid and enforceable against any trustee or examiner appointed in the Case, upon the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "Successor

13

Case") and/or upon the dismissal of the Case; provided, however, that this provision shall not apply to any bankruptcy case filed by the Debtor in the future after the closing of this Case. The Post-petition Liens shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code or challenge on any basis.

13.    Except with respect to the Carve-Out during the Interim Period pending the entry of a Final Order, all DIP Obligations shall be an allowed super priority administrative expense claim (the "DIP Super Priority Claim" and, together with the Post-petition Liens, the "DIP Protections") with priority in the Case under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726(b), 1113 and 1114 of the Bankruptcy Code; provided, however, that the proceeds of Avoidance Actions shall not be used to pay the Super Priority DIP Claim. Except in respect of the administrative expense claims provided for in the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code or otherwise, that have been or may be incurred in these proceedings, or in any Successor Case, and no priority claims are, or will be, senior to, prior to or pari passu with the DIP Protections or the DIP Obligations, or with any other claims of the DIP Lender arising hereunder.

14.    The Postpetition Liens and the DIP Super-Priority Claim, to the extent granted hereunder to and for the benefit of the DIP Lender, respectively, shall be subject and subordinate to the following expenses (collectively, the "Carve Out"):

a.  the claims of the respective retained professionals of the Debtor in this Case, (collectively, the "Retained Professionals") for fees and expenses incurred at any time on and after the Petition Date and prior to the delivery of a Carve-Out Trigger Notice[3] up to the amount set forth for each professional in the Budget; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed, if and as applicable, on a final basis by this Court under sections 330 or 331 or allowed pursuant to the Court-approved terms applicable to the retention of the Debtor's Retained Professionals (the "Pre-Termination Date Expenses" and the permitted amount thereof, the "Pre-Termination Date Amount");

b.  the claims of the Retained Professionals for fees and expenses which were incurred on and after the delivery of a Carve-Out Trigger Notice; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed, if and as applicable, on a final basis by this Court under sections 330 or 331 of the Bankruptcy Code, and do not exceed $50,000 in the aggregate for all of the Retained Professionals, plus the fees and expenses incurred by a trustee or any professionals engaged by any successor to the Debtor, including, without limitation, any trustee appointed under chapter 11 or 7 of the Bankruptcy Code or any examiner with expanded powers, in an aggregate amount not to exceed $20,000 (such fees and expenses described in this clause the "Post-Termination Date Expenses" and the permitted amount thereof, the "Post-Termination Amount" and, together with the Pre-Termination Date Amount, the "Professional Fees");

d.  the unpaid fees and expenses of the United States Trustee and the Clerk of the Court (or any agent thereof) pursuant to 28 U.S.C. § 1930(a)(6) or otherwise; and

e.  unpaid operating expenses up to the amount set forth in the Budget for such expenses that were incurred prior to the delivery of a Carve-Out Trigger Notice, solely to the extent that such claims would have been authorized to be paid by the Debtor prior to such date, pursuant to the Budget, if the Carve-Out Trigger Notice had not been delivered.

15.    The following events shall each constitute an event of default hereunder, (collectively, the "Events of Default"):

a.  the violation of or failure by the Debtor to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order (including the Budget);

---

[3] As used herein, "Carve-Out Trigger Notice" means, upon the occurrence of an Event of Default, a written notice delivered by the DIP Lender to counsel for the Debtor expressly stating that the Carve-Out has been invoked and terminating the right of the Debtor to pay professional fees incurred after such date outside of the Carve-Out. Upon receipt of the Carve-Out Trigger Notice, the Debtor shall provide immediate notice by electronic mail to the professionals retained in the Case informing them that a Carve-Out Trigger Notice has been received and further advising them that the Debtor's ability to pay professional fees incurred subsequent to the date thereof is subject to the Carve-Out.

9661024-2

b.  the obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Post-petition Collateral which is equal or senior to any security interest, mortgage or other lien of the DIP Lender, or (ii) entitled to priority administrative status which is equal or senior to that granted to the DIP Lender herein;

c.  the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Post-petition Collateral, or (ii) with respect to any lien of or the granting of any lien on any Post-petition Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtor;

d.  the reversal, vacatur, or modification (without the express prior written consent of the DIP Lender, in its sole discretion) of this Interim Order;

e.  dismissal of the Case or conversion of the Case to chapter 7 case, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

f.  the sale of any portion of the Debtor's assets outside the ordinary course of business without the prior written consent of the DIP Lender, in its sole discretion;

g.  the Debtor's failure to obtain entry of a Final Order by April 24, 2020;

h.  the granting of any motion providing for reconsideration, stay, or vacatur of this Interim Order; or (1) the Debtor shall assert in any pleading filed in any court that any material provision of this Interim Order is not valid and binding for any reason, or (2) any material provision of this Interim Order shall, for any reason, cease to be valid and binding without the prior written consent of the DIP Lender; and

i.  the surrender or repossession of any of the Debtor's Equipment (as defined in section 1110(a)(3) of the Bankruptcy Code) without the consent of DIP Lender.

16.     Immediately upon the occurrence and during the continuation of an Event of Default, the DIP Lender may declare a termination of the obligations to advance any additional amounts under the DIP Loan (any such declaration shall be referred to herein as a "Termination Declaration"). The Termination Declaration shall be given by e-mail or facsimile (or other electronic means) contemporaneously to counsel to the Debtor, counsel to any Statutory Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made

shall be referred to herein as the "Termination Declaration Date"). On the Termination Declaration Date the DIP Lender shall not be obligated to advance any additional funds under the DIP Loan. Within seven (7) business days after the Termination Declaration Date (the "Remedies Notice Period"), the Debtor and/or the Statutory Committee shall be entitled to seek an emergency hearing with the Court seeking an emergency determination of whether an Event of Default has occurred, with the rights and objections of all parties reserved with respect thereto. Unless the Court determines otherwise during the Remedies Notice Period (which shall be extended, if necessary, to accommodate the Court's calendar for an emergency hearing), the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice to or order of the Court, the DIP Loan Documents, as applicable, and as otherwise available at law against the Post-petition Collateral, without further order of or notice, application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the Post-petition Collateral or any other rights and remedies granted to the DIP Lender, this Interim Order or the DIP Loan Documents, as applicable. In addition, the DIP Lender shall have the right to file an emergency motion with the Court during the Remedies Notice Period seeking, among other things, relief from the automatic stay otherwise applicable to the DIP Lender so as to be able to exercise its rights and remedies at law or in equity to satisfy the DIP Obligations, the Superpriority Claims, and any other obligation under this Interim Order or the DIP Loan Documents.

17. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Post-petition Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may

9661024-2

otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the Post-petition Liens, or to entitle the DIP Lender to the priorities granted herein. Notwithstanding the foregoing, the Debtor and the DIP Lender are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Lender shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge or dispute or subordination, at the time and on the date of entry of this Interim Order.  Upon the request of the DIP Lender, without any further consent of any party, the  Debtor  is  authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the DIP Lender to further validate, perfect, preserve and enforce the Post-petition Liens and claims.  The Debtor shall execute and deliver to the DIP Lender all such agreements, financing statements, instruments and other documents as the DIP Lender may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the  Post-petition Liens and claims.  All such documents will be deemed to have been recorded and filed as of the Petition Date.  A certified copy of this Interim Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing

offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording. The DIP Lender, in its discretion, may also file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized and is directed to file or record such copy of this Interim Order.

18.     Nothing herein shall be construed as consent to the allowance of, or obligate the DIP Lender to pay, any professional fees or expenses of the Debtor, any Statutory Committee or of any person or shall affect the right of the DIP Lender to object to the allowance and payment of such fees and expenses or to permit the Debtor to pay any such amounts not set forth in the Budget. The DIP Lender reserves the right to object to any request or application for the payment of professional fees that may be submitted or filed in the Case.

19.     No costs or expenses of administration that have been or may be incurred in the Chapter 11 Case at any time shall be charged against the DIP Lender or the Post-petition Collateral

20.     Neither the proceeds from DIP Loan nor the Carve Out funds may be used: (a) in connection with or to finance, directly or indirectly, in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the DIP Lender, (ii) invalidating, setting aside, avoiding, recharacterizing or subordinating, in whole or in part, the obligations under the DIP Loan or this Interim Order, (iii) for monetary, injunctive or other affirmative relief against the DIP Lender, or (iv) preventing, hindering or otherwise delaying the exercise by the DIP Lender of any rights and/or remedies under this Interim Order, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Lender upon any of the Collateral or Post-petition

9661024-2

Collateral; (b) for objecting to, contesting, or interfering with in any way the DIP Lender's enforcement or realization upon any of the Post-petition Collateral once an Event of Default has occurred; (c) for selling or otherwise disposing of the Postpetition Collateral without the consent of the DIP Lender; (d) for objecting to or challenging in any way the claims, liens, or interests (including interests in the Post-petition Collateral) held by or on behalf of the DIP Lender; (e) for asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions, against the DIP Lender; (f) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any other rights or interests of DIP Lender; or (g) for preventing, hindering or otherwise delaying the exercise by the DIP Lender of any rights and remedies granted under this Interim Order.

21.     All net proceeds of the sale or other disposition of any Post-petition Collateral outside the ordinary course of business, prior to the occurrence of an Event of Default, shall be paid to the DIP Lender pending the application thereof to the DIP Obligations according to the provisions of this Interim Order and subject, in all respects, to the Carve Out.

22.     The DIP Lender has acted in good faith in connection with this Interim Order and its respective reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Loan contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, stayed, amended or vacated by a subsequent order of this or any other Court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, stay, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens, claims

or priority authorized or created hereby.  Notwithstanding any such modification, amendment or vacatur, any claim or lien granted to the DIP Lender hereunder arising prior to the effective date of such modification, amendment or vacatur of any DIP Protections granted to the DIP Lender shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted herein, with respect to any such claim or lien.  Since the loan made pursuant to the DIP Loan Documents is made in reliance on this Interim Order, the obligations owed to the DIP Lender prior to the effective date of any stay, modification or vacation of this Interim Order cannot, as a result of any subsequent order in the Case or in any Successor Case, be subordinated, lose its lien priority or super priority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this Interim Order and/or the DIP Loan Documents.

23.    All costs and expenses of the DIP Lender in connection with the Case, including, without limitation, legal, accounting, financial advisory fees, will be paid by the Debtor.  The DIP Lender shall provide to the U.S. Trustee, counsel to the Debtor and counsel to the Statutory Committee (the "Fee Notice Parties"), on a monthly basis, the total amount of professional fees and expenses described in this subsection that are incurred per calendar month in the Case, upon request, along with summary invoices relating to such fees and expenses.   Under no circumstances shall professionals for the DIP Lender be required to comply with the U.S. Trustee fee guidelines. In  the event any of the Fee Notice Parties object to such fees or expenses, or any portion thereof, such objecting Fee Notice Party shall send written notice of such objection to the DIP Lender within five (5) days of receipt of the invoice.  Any unresolved objection shall be resolved by the Court after notice and hearing. Absent any objections, the Debtor shall pay

such requested fees and expenses within five (5) days of receipt of the invoices.

24.     The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to implement this Interim Order, including, without limitation, to (1) permit the Debtor to grant the Post-petition Liens and to incur all liabilities and DIP Obligations to the DIP Lender hereunder, and (2) authorize the DIP Lender to retain and apply payments hereunder in accordance with the provisions of this Interim Order.

25.     The DIP Lender may, but is not required to file proofs of claim in the Case or any Successor Case.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in the Case or any Successor Case shall not apply to the DIP Lender.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the Case or Successor Case to the contrary, the DIP Lender is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim in the Case or any Successor Case.

26.     The Final Hearing to consider entry of the Final Order and final approval of the DIP Loan , shall be held on _____ at ___, at the United States Bankruptcy Court for the Southern District of Florida, Miami Division, C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Room _____,     Miami,    FL    33128    before    the    Honorable _____, United  States Bankruptcy Judge.

27.     This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

###

SUBMITTED BY:

Paul J. Battista, Esq
Genovese Joblove & Battista, P.A.
100 S.E. Second Street, 44th Floor
Miami, FL 33131
(305) 349-2300 (p)
(305) 349- 2310 (f)
pbattista@gjb-law.com

9661024-2

EXHIBIT B
<u>BUDGET</u>

**MIAMI AIR INTERNATIONAL**
**CASH FORECAST**
**Petition Filing Date through April 24,2020**

| Description | Total Amount |
|---|---|
| **Bank of America Opening Available Balance** | $    1,560,258.49 |
| **Receipts** | |
| **GOVERNMENT RECEIPTS** | 1,652,084.72 |
| **MISCELLANEOUS DEPOSITS** | 2,030,199.19 |
| **TRANSFERS FROM ESCROW ACCOUNT** | - |
| **Total Receipts** | 3,682,283.91 |
| **Payments** | |
| **401K Transfer** | 215,000.00 |
| **Post Petition General Payables & Credit Cards** | 827,361.64 |
| **DFAS ACH Payments** | 252,036.73 |
| **AMEX Payments** | 100,000.00 |
| **Critcal Vendor Payments** | 2,086,538.88 |
| **Utility Payments** | 29,950.00 |
| **TUI Tax Payments to US Gov't** | 1,038,193.20 |
| **3 -Aircraft Lease-N749MA-ACG-10/17/16** | - |
| **9 -Aircraft Lease-N758MA-Aergo Capital** | - |
| **10-Aircraft Lease-N735MA-SMBC Aviation** | - |
| **11-Aircraft Lease-Engine Lease - ELFC** | - |
| **12-Aircraft Lease-Engine Lease - Kellstrom** | - |
| **Rent and Other office equipment rent** | 58,993.54 |
| **Commercial Insurance** | 703,788.29 |
| **Professional Fees - Attorney** | - |
| **United States Trustee Fees (1st pmt in Apr)** | 21,759.17 |
| **Auto Debit - Fuel** | - |
| **Auto Debit - Visa** | 75,000.00 |
| **Captain Accounts Funding** | - |
| **Debit Memos** | - |
| **FET Taxes** | 309,375.02 |
| **PFC, AGRI, CUSTOMS, IMMIGRA** | 100,319.20 |
| **Maintenance Reserve - N735 -** | - |
| **Maintenance Reserve - N749 - 10/17/16** | - |
| **Maintenance Reserve - N758** | - |
| **Maintence Reserve-Engine Lease - ELFC** | - |
| **Maintenancae Reserve-Engine Lease - Kellstrom** | - |
| **Payroll Bi-Monthly** | 1,211,169.02 |
| **Payroll Taxes  - Monthly** | 231,333.28 |
| **Health Insurance** | 200,000.00 |
| **Health Insurnace Stop Loss Policy Premium** | 47,480.90 |
| **September 11th Security Fee** | 151,648.00 |
| **Taxes - Quarterly (Jan-Mar)** | - |
| **Wire Transfers - Fuel** | 180,000.00 |
| **Wire Transfers - MACA** | 25,258.48 |
| **Total Payments** | 7,865,205.35 |
| **Net Operating Cash Flow +/-** | $    (4,182,921.43) |
| **Managed Funds - Receipts** | |
| **RADIANT GLOBAL LOGISTICS - Government** | - |
| **GOVERNMENT RECEIPTS - SUN COUNTRY** | - |
| **Total Receipts** | - |
| **Managed Funds - Payments** | |
| **Wire Transfers - Radiant Global Logistics** | - |
| **Wire Transfers - Sun Country AMC** | - |
| **Wire Transfers - Apple/TUI** | - |
| **Total Debits** | 0.00 |
| **Managed Funds Net Cash Flow +/-** | 0.00 |
| **Bank of America Closing Available Balance** | $    (2,622,662.94) |